IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CARNEGIE GAS, INC., *et al.*, | ) | CASE NO. 1:19 CV 02809 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE DONALD NUGENT |
| -vs- | ) | |
| | ) | |
| S. & D. COFFEE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

I.  **INTRODUCTION AND BACKGROUND**

This action arises from the defendant, S & D, Inc.'s ("Defendant") intentional and ongoing scheme to defraud the plaintiffs, Carnegie Gas, Inc., Henean Gas, Inc., Buckeye Petroleum, Inc., East 55th Gas, Inc., and Cedar Gas Inc. (collectively, "Plaintiffs"), by shorting coffee products shipped to them, and by Defendant's actions in trying to conceal and cover up its scheme so that the Plaintiffs would be unaware of the shortages in the coffee being supplied. Defendant has filed a motion to dismiss all of Plaintiff's claims, pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), alleging Plaintiffs have failed to state claims upon which relief may be granted.

As discussed further below, Plaintiffs respectfully submit that Defendant's Motion should be denied because Plaintiffs' First Amended Complaint has sufficiently pleaded a breach of contract claim, and a fraud claim, and the alleged fraud was not based simply on the same facts as Plaintiff's breach of contract claim, as posited by Defendant. As for Plaintiff's claims for unjust enrichment and conversion, those claims constitute alternative theories of recovery, which would be

available in the event that no contract or breach thereof was found to exist between Plaintiffs and Defendant. See First Amended Complaint at ¶ 43. Hence, for this reason also, Plaintiff's alternatively pleaded claims for unjust enrichment and conversion should not be dismissed at this stage of the proceedings.

## II.  STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6), the Court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See, e.g., *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007). Accord *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999 ). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, at 546. Thus, "a district court weighing a motion to dismiss asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, supra, at 563 n.8, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendant's Motion also ignores the well settled law that since the advent of notice pleading formal pleading requirements have been abandoned so that a complaint no longer needs to set forth specific factual allegations. See, e.g., *Mumford v. Interplast, Inc*., 119 Ohio App.3d 724, 696 N.E.2d 259,263 (2nd Dist. 1997). Indeed, FRCP 8(a) explicitly provides that a claim for relief merely "shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." As observed and stated by the Ohio Supreme Court:

> the "standard for granting a motion to dismiss is in accord with the notice pleading regimen set up by the Federal Rules of Civil Procedure and incorporated into the Ohio Rules of Civil Procedure. Under these rules, a plaintiff is not required to prove his or her case at the pleading stage. **Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence.** Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

As discussed further below, application of the above standard of review and well settled pleading principles to the allegations in Plaintiffs' First Amended Complaint mandates denial of Defendant's Motion.

## II.    LAW AND ARGUMENT

### A.    Plaintiffs' Breach Of Contract Claim Does Not Fail As A Matter Of Law Because Plaintiffs Were Not Required To Reject Bags Of Coffee Which They Never Received.

Defendant argues Plaintiffs' breach of contract claim is barred under Chapter 1302 of the Ohio Revised Code ("R.C.") (aka Ohio's Uniform Commercial Code -- "UCC") because Plaintiffs failed to reject bags of coffee. In actuality, however, Plaintiffs' claims are based on their allegations concerning coffee that they never received, which begs the question of how Plaintiffs could reject something they never even got in the first place.

Furthermore, contrary to Defendant's claim, R.C. § 1302.60 does not mandate rejection of goods in order to pursue a breach of contract action. Rather, R.C. § 1302.60 merely provides that "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer *may* (emphasis added): (A) reject the whole; or (B) accept the whole; or (C) accept any commercial unit or units and reject the rest." Here, the Plaintiffs accepted the bags of coffee which they received, because the bags they received did conform to the parties' contract.

This is not a situation, such as found in the cases cited in Defendant's Motion, where the goods provided were defective or substandard. Instead, the problem here was that Defendant failed to provide the correct number of bags of coffee in its shipments. Furthermore, R.C. § 1302.87 specifically authorizes buyers to recover damages for non-delivery.

Defendant represented to Plaintiffs that each box purchased by Plaintiffs would contain 100 bags of coffee, and consistent with its representations Defendant charged Plaintiffs, and issued invoices to Plaintiffs, which reflected that each box purportedly contained 100 bags of coffee. Such was not the case, however. See Plaintiff's First Amended Complaint at ¶'s 12-23. Defendant undoubtedly knew that the Plaintiffs were unlikely to engage in the time-consuming task of manually counting every single box of coffee to ensure each box actually contained 100 bags.[1] Further, by typically shorting the boxes by only a handful or two of bags, visual inspection of the boxes did not lead to any suspicion. Hence the brilliance of Defendant's scheme.

Although Defendant pays lip service to the standard of review governing its Motion, it proceeds to disregard it, while also improperly introducing matters outside of the pleadings, such as counsel for Plaintiffs' pre-suit demand letter,[2] which it then cites to support its assertion that it as not until a year after Plaintiffs first discovered shortages in the boxes of coffee being shipped to them that they first notified Defendant of any shortage.[3] Defendant's assertion, however, ignores the allegations contained in ¶ 14 of the First Amended Complaint,[4] which plainly show

---

[1] Indeed, it was only by happenstance, occasioned by one store running out of coffee and another store agreeing to split a box of its coffee 50-50, which required them to manually count the bags in the box, that Plaintiffs discovered that shortages existed.

[2] The demand letter also was a privileged and confidential settlement communication, pursuant Federal Rule of Evidence 408.

[3] See Defendant's Motion at pp. 3 and 6.

[4] ¶ 14 states: "On or around July 27, 2017, Plaintiffs discovered that, in fact, the boxes being shipped to Plaintiffs' respective stores did not contain 100 bags of coffee, however. Thinking that perhaps one of Defendant's drivers was responsible for the shortage, Plaintiffs questioned one of Defendant's drivers, who was named Jim, about this situation, and the Defendant's driver showed Plaintiffs' employees two boxes of coffee in his truck, which were sealed and slated for delivery to Plaintiffs. Defendant's driver and Plaintiffs' employee opened these boxes and counted the coffee bags contained therein and confirmed that there were not 100 bags of coffee in the boxes. Defendant's driver and Plaintiffs' employee driver also opened an unsealed box of coffee bags, which was slated for delivery to a local hospital, and this box also did not contain 100 bags of coffee."

Defendant's employee had personally observed, and therefore knew, Defendant's boxes were short of coffee, on July 27, 2017, which is when Plaintiffs first discovered the shortage. Hence, Defendant's claim it had no notice or knowledge of the shortages until July 2018 when it received the demand letter from Plaintiff's counsel is without merit, as the knowledge of its employee is legally imputed to Defendant. See, e.g., *State, ex rel. Nicodemus v. Industrial Commission* (1983), 5 Ohio St.3d 58, 60 (a general principle of agency law is that a principal is chargeable with and bound by the knowledge of or notice to its agents or employees received by the agent or employee in the due course of his employment).

Defendant's asserted lack of notice or knowledge of any shortages also ignores Plaintiffs' multiple allegations that Defendant had been knowingly and intentionally shorting Plaintiffs of coffee for well over a decade,[5] which necessarily means that Defendant had notice and knowledge of the shortages. These allegations must be taken as true at this stage of the proceedings. Moreover, it is hard to imagine how these allegations, if assumed to be true, as they must be under the standard of review, not only fail to set forth a breach of contract claim, but also give rise to no other legal claim or remedy, as argued by Defendant.

Finally, Defendant also ignores ¶'s 24-33 of the First Amended Complaint, wherein Plaintiffs alleged offer, acceptance, and consideration, thereby establishing the existence of a contract, as well as a breach of the terms of that contract, and damages. Plaintiffs do not need do allege any more than that to survive a motion to dismiss. See, e.g., *Macula v. Lawyers Title Ins. Corp.*, No. 1:07-cv-1545, slip op. at 6 (N.D. Dist. Ohio Aug. 14, 2008 (Nugent, J.).[6]

In sum, and for all of the foregoing reasons, Plaintiff's breach of contract claim should not be dismissed as a matter of law.

---

[5] See, e.g., ¶'s 17-21, 29-32, 45-46, and 51-53 of the First Amended Complaint
[6] Defendant cited *Macula* at p. 14 of its Motion and attached a copy of the case to its Motion as Exhibit 3.

### B. Plaintiffs' Fraud Claim Is Not Based On The Same Actions As Their Breach Contract Claim.

Defendant next argues that Plaintiffs' claims for fraud, unjust enrichment, and conversion are subsumed within its breach of contract claim. First, according to Defendant, Plaintiff's breach of contract claim doesn't even exist. Assuming *arguendo* Defendant is right, Plaintiff's other claims cannot then be subsumed within a non-existent breach of contract claim.

Second, and in any event, Defendant's assertion that Plaintiffs' fraud claim is based on the same actions as their breach of contract claim is not well taken. To the contrary, Plaintiffs' fraud claim, specifically alleges that Defendant, in addition to failing to provide the amount of coffee agreed to by the parties, from 2004 through July of 2018 engaged on a weekly basis in a calculated "intentional and ongoing scheme to defraud Plaintiffs" by concealing and covering up the shortages by, among other things, providing "falsified invoices", and "organizing deceptive, noncompliant product shipping and shipments", and "intentionally billing Plaintiffs with inaccurate invoices." See First Amended Complaint at ¶'s 51-79. Plaintiff's Complaint further alleged that "Defendant's conduct and scheme also amount[ed] to fraud in that Defendant breached its legal and/or equitable duty by using its dominant role in the industry as a coffee supplier to deceive Plaintiffs." First Amended Complaint at ¶ 72. Plaintiffs were additionally damaged by Defendant's fraudulent scheme to deprive them of the proper amount of coffee through having increased costs, expenses, and financing expenses. First Amended Complaint at ¶ 60.

The above allegations demonstrate that Defendant's actions and misconduct, contrary to the portrayal presented in Defendant's Motion, went well beyond simply failing to provide the agreed upon amounts of coffee pursuant to the parties' contractual arrangement. As such, Defendant's reliance on *Tripoint v. Rhein Chemie Corp.*, No. 1:14-cv-360, 2014 WL 3785766

(N.D. Ohio July 31, 2014), and *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (1996), is misplaced and unavailing.

Furthermore, in *Tripoint*, unlike here, it was not alleged that the defendant had engaged in an ongoing scheme to intentionally deceive the plaintiff and conceal its wrongdoing. Rather, the alleged fraud in *Tripoint* was limited to one purchase order and one shipment of incorrectly labeled boxes of chemicals, which the plaintiff claimed was the result of the defendant "fail[ing] to use reasonable care in labeling the boxes." See *Tripoint*, supra, at pp. 2, 4.

As for *Textron*, supra, it is procedurally inapposite to the instant case, as it did not involve a motion to dismiss, but rather involved an appeal of jury verdicts rendered against the defendant Nationwide on plaintiff's claims for breach of contract, fraud and negligent misrepresentation, and an award of attorneys' fees to the plaintiff. See *Textron*, 115 Ohio App.3d at 137, 684 N.E.2d at 1264-65. *Textron*, which involved claims relating to a master lease agreement for computers and computer equipment, is also factually distinct from the instant matter.[7]

> 1. **Even Assuming *Arguendo* That Plaintiffs' Fraud Claim Is Based Upon The Same Actions As Their Breach Of Contract Claim It Still Should Not Be Dismissed Because Defendant Breached Duties Owed To Plaintiffs Separately From The Parties Contract.**

First, as demonstrated above, Plaintiffs' fraud claim is not based on the same actions as their breach of contract claim. To the contrary, Plaintiffs' fraud claim is based on Defendant's intentional and active concealment, which was designed to trick Plaintiffs into believing Defendant was complying with its contractual obligations, when in point of fact it was not, and which was further intended to induce Plaintiffs to continue doing business with Defendant even

---

[7] On appeal, the jury verdicts were reversed because plaintiff failed at trial to establish damages on its claims for breach of contract and fraud. *Textron*, 115 Ohio App.3d at 150-151, 684 N.E.2d at 1270-71.

though Defendant was systematically cheating them out of 5-10 % of their coffee product. First Amended Complaint at ¶'s 73-79. Hence, under the circumstances, Plaintiffs have no legal obligation to allege a breach of a duty owed outside of the parties' contract in order to proceed with their fraud claim. See, e.g., *Hodell-Natco Industries, Inc. v. SAP America, Inc.*, 13 F.Supp.3d 786, 795 (N.D. Ohio 2014), citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir. 1976).

Second, even if Plaintiffs' fraud claim was based on the same actions as their breach of contract claim, dismissal of Plaintiffs' fraud claim would still be improper because Defendant also breached its common law duty under Ohio law to refrain from making fraudulent representations to induce a party to enter into a contract and/or continue in a contractual relationship, which is a duty that is owed even if no contract existed. See, e.g., *Hodell-Natco*, supra, 13 F.Supp.3d at 795-796, citing *Onyx Envtl. Servs. v. Maison*, 407 F.Supp.2d 874, 879 (N.D. Ohio 2005). See also First Amended Complaint at ¶ 65. As explained by the District Court in *Hodell-Natco*, supra, while "[g]enerally the existence of a contract action … excludes the opportunity to present the same case as a tort claim" … (citation omitted), a tort claim based upon the same actions as a breach of contract claim "will exist independently of the contract action … if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Hodell-Natco*, supra, at 795, citing *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111, 117 (6th Cir. 1976).

In *Hodell-Natco*, supra, the defendant, SAP America, Inc. ("SAP") moved for summary judgment arguing, as does the Defendant herein, that the plaintiff's breach of contract claim foreclosed its claims of fraud. The Magistrate Judge rejected SAP's position and recommended denial of SAP's motion for summary judgment. Following a *de novo* review, the District Court

concluded that the Magistrate's legal reasoning and recommendation to deny summary judgment was correct because SAP had made false promises and representations to induce plaintiff to enter into a License Agreement, and in so doing breached its collateral common law duty to refrain from making fraudulent representations to induce a party to enter a contract. *Hodell-Natco*, supra, at 795, citing *Onyx*, supra, 407 F.Supp.2d at 879 and *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 503, 1998 Ohio 612, 692 N.E.2d 574, 578 (Ohio 1998) (wherein the Supreme Court of Ohio stated that a claim of fraudulent inducement often involves " a misrepresentation of facts outside the contract or other wrongful conduct [inducing] a party to enter into the contract."). See also *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1 (1989) (a person "who, in the course of.... [a] transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating this information.").

In the present case, as in *Hodell-Natco*, supra, there also are sufficient allegations to show that Defendant knowingly misrepresented the amount of coffee being shipped to Plaintiffs and actively sought to conceal the shortages of coffee being shipped by, among other things, falsifying invoices, so as to induce Plaintiffs to continue doing business with Defendant even though they were unwittingly being cheated by Defendant. First Amended Complaint at ¶'s 53-58, 62, 74. Indeed, Plaintiffs would not have entered into an agreement with Defendant if Plaintiffs had known the true nature of Defendant's lies; insufficient coffee shipments contrary to the agreed upon terms; and Defendant's scheme to cheat Plaintiffs out of monies for Defendant's own undeserved use. First Amended Complaint at ¶ 65. In so doing, as in *Hodell-Natco*,

Defendant breached a duty collateral to the contract. Moreover, there are also ample allegations that the Defendant's representations were intentional and knowingly false. Id. at ¶'s 66-67, 69.

> **2. As A Results Of Defendant's Fraud, Plaintiffs Incurred Additional Damages Which Are Separate From Its Breach Of Contract Damages.**

But for the Defendants fraudulent actions and calculated cover-up, Plaintiffs would likely have discovered the coffee shortages earlier than they did, and they would have averted suffering additional and ongoing damages occasioned by Defendant's long-standing fraudulent scheme. As a result of the Defendant's fraudulent actions and intentional concealment, and its scheme to cover up its shorting Plaintiffs of the coffee due them, however, Plaintiffs unwittingly were subjected to and incurred additional and ongoing damages by virtue of the Defendant's success in covering up its scheme for many years. See First Amended Complaint at ¶'s 60, 79. Further, because Defendant has refused to reimburse Plaintiffs, they are now are also accruing attorney fees and costs due to Defendant's misconduct. See First Amended Complaint at ¶ 71. As a result of said misrepresentations, Plaintiffs were further damaged by being deprived of the opportunity to negotiate with other coffee suppliers to obtain coffee at a better price. First Amended Complaint at ¶ 59. As previously mentioned above, Plaintiffs also were additionally damaged by Defendant's fraudulent scheme because it caused them to incur increased costs, expenses, and financing expenses. First Amended Complaint at ¶ 60. Lastly, Plaintiffs also are entitled to punitive damages and recoupment of their attorneys' fees.

> **C. Plaintiffs' Fraud Allegations Are Stated With Sufficient Particularity.**

F.R.C.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." F.R.C.P. 9(b). "The purpose of

F.R.C.P. 9(b) is to provide notice of the precise misconduct with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." See, e.g., *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). While Rule 9(b) generally requires plaintiffs to plead the who, what, when, where, and how, as pointed out by Defendant in its motion to dismiss, the Defendant fails to acknowledge, notwithstanding the foregoing pronouncement, that a plaintiff "need not, however, plead the date, place or time of the fraud, so long as they use an alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" See, e.g., *Rolo*, supra, 155 F.3d at 658 (additional citation omitted). The Federal Circuit Courts have also cautioned that courts should "apply the rule with some flexibility **and should not require plaintiffs to plead issues that may have been _concealed_ by the defendants.**" See *Rolo*, 155 F.3d at 658 (emphasis added).

As demonstrated in the foregoing sections of this brief, the Plaintiffs specifically alleged that Defendant not only failed to provide the amount of coffee agreed to by the parties, but that it also engaged in a calculated "intentional and ongoing scheme to defraud Plaintiffs" by **concealing and covering up the shortages** by, among other means, providing "falsified invoices", and "organizing deceptive, noncompliant product shipping and shipments", and "intentionally billing Plaintiffs with inaccurate invoices." See, e.g. First Amended Complaint at ¶'s 20 and 63. Moreover, in addition to pleading that Defendant intentionally concealed its fraud, Plaintiffs also pleaded, contrary to Defendant's assertion, the nature of the fraud (falsifying invoices, etcetera), and the time frame of the fraud, as evidenced by ¶'s 51-55, which stated that:

> 51.     From 2004 through July of 2018, Defendant sent Plaintiffs numerous falsified invoices in which Defendant represented to Plaintiffs that the boxes of coffee that Defendant shipped to Plaintiffs all contained 100 bags of coffee.

> 52. Defendant knew that the that the boxes of coffee that it shipped to Plaintiffs did not contain 100 bags of coffee, and knew that its invoices which it sent to Plaintiffs contained material misrepresentations as to the actual amount of coffee being sent to Plaintiffs.
>
> 53. From 2004 through July of 2018, repeatedly Defendant sent invoices to Plaintiffs in which Defendant represented that said invoices accurately set forth the amount of coffee being shipped to Plaintiffs and being paid for by Plaintiffs, when Defendant knew that such was not the case.
>
> 54. These invoices were materially false in that they did not accurately reflect the actual amount of coffee being shipped to Plaintiffs by Defendant and being paid for by Plaintiffs.
>
> 55. The materially false invoices sent by Defendant to Plaintiffs took place on a weekly basis from 2004 through July of 2018.

Although Plaintiffs cannot at this time identify the individual(s) responsible for preparing Defendant's falsified invoices that does not warrant dismissal given the other facts and circumstances, which have been pleaded in this case.

### D. **Plaintiffs' Alternatively Pleaded Conversion Claim Should Not Be Dismissed At This Stage Of The Proceedings.**

In seeking to dismiss Plaintiffs' conversion claim, Defendant again argues that is based on the same actions as their breach of contract claim. See Motion at p. 12. As previously noted herein, however, the Defendant has asserted that Plaintiff's breach of contract claim doesn't even exist. Hence, if Defendant is correct, Plaintiff's other claims cannot then be subsumed within a non-existent breach of contract claim.

Defendant further claims that Plaintiffs conversion claim should be dismissed because Plaintiffs alleged money damages were not "earmarked" or identifiable. Id. Defendant's argument in this regard also is not well taken.

First, the cases on which Defendant relies for this proposition all involved conversion of money and not, as here, goods. This is a critical distinction because as explained by the court in *RAE Associates, Inc. v. Nexus Communications, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, (10th Dist. 2015), a case cited and relied on by Defendant,[8] where the allegedly converted property at issue is money, as opposed to goods, this places an additional specific evidentiary burden upon plaintiff to establish that the funds were "earmarked," or capable of identification, and not merely that the defendant had an obligation to pay a certain sum as a general debt. *RAE*, supra, 2015-Ohio-2166, at ¶ 31, 36 N.E.3d at 765-766 (additional citation omitted). Consequently, because the instant matter involves goods, and not money, Plaintiffs are not required to establish the additional "***evidentiary burden***" that monies were earmarked or otherwise capable of identification, as erroneously claimed by Defendant. Further, inasmuch as this is an "evidentiary burden", even if Plaintiffs were required to establish such evidence in order to ultimately prevail, which is not the case, they should be given the chance to establish such evidence through the discovery process.

As stated by the Ohio Supreme Court in *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990), conversion involves the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding property from the owner's possession under a claim inconsistent with the owner's rights. The elements of conversion are that: (1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property or property rights; and (3) damages resulted therefrom. See, e.g., *Dice v. White Family Cos., Inc.*, 173 Ohio App.3d 472, 2007-Ohio-5755, at ¶ 17, 878 N.E.2d 1105 (2d Dist.). Examination of ¶'s

---

[8] See Defendant's Motion at p. 13.

34-41 of the First Amended Complaint shows that Plaintiffs have pleaded all of the elements necessary to establish their conversion claim.

Second, and in any event, the amount of money Plaintiffs paid Defendant is capable of identification, as demonstrated by ¶ 12 of the First Amended Complaint, which stated that "[d]uring the course of the business relationship between Plaintiffs and Defendant, the Plaintiffs collectively purchased, on average, 10 boxes of coffee from Defendant on a weekly basis, at a cost of $85.00 per box. The measure of damages in a conversion action is the value of the converted property at the time it was converted. See, e.g., *Tabar v. Charlie's Towing Serv., Inc.* (8th Dist. 1994), 97 Ohio App.3d 423, 427-428. As such, the amount of Plaintiffs' damages is identifiable by simply multiplying the number of bags of coffee which Plaintiffs were shorted by Defendant by the unit cost of each bag of coffee. Moreover, the precise amount of damages is a matter which can be further ascertained through the process of discovery. In any event, at the pleading stage, a plaintiff is not required to set for its damages occasioned by a defendant's conversion with particularity and precision, and failure to do so is not a proper basis for dismissal.

For all of the above reasons, Plaintiffs' conversion claim should not be dismissed at this stage of the proceedings.

### E. Plaintiffs' Alternatively Pleaded Unjust Enrichment Claim Also Should Not Be Dismissed At This Stage Of The Proceedings.

In their First Amended Complaint, Plaintiffs stated that their "claim against Defendant for unjust enrichment is plead in the alternative in the event that no contract is found." First Amended Complaint at ¶ 43. Yet again, as previously mentioned, Defendant claims Plaintiffs does not have a breach of contract claim. Hence, if the allegations of the First Amended Complaint for breach of contract are deemed insufficient to establish the existence and breach of

a contract between the parties, as claimed by Defendant, the allegations of the First Amended Complaint, at a minimum, demonstrate Defendants have been unjustly enriched. The elements of unjust enrichment are as follows: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."[9]

Plaintiffs' First Amended Complaint sufficiently states a claim for unjust enrichment claim since it sets forth allegations showing: (1) that Plaintiffs ***conferred*** a benefit to Defendants "by overpaying Defendant for coffee products Defendant promised to deliver to Plaintiff, but never did;" (2) that "Defendant ***knew*** of this benefit, and Defendant arranged the whole scheme to acquire said benefit"; and (3) that "Defendant ***retained*** Plaintiffs' overpayment, and Defendant used Plaintiffs' overpayment for its own benefit, rather than the payments' intended purpose." See First Amended Complaint at ¶'s 43-48.

### IV.     **CONCLUSION**

For all of the foregoing reasons, and in accordance with the legal authorities and allegations of the First Amended Complaint cited herein, Defendant's Motion should be denied.

                                                                Respectfully submitted,

                                                                */s/*     **Brian Green**
                                                                _____
                                                                BRIAN GREEN, ESQ. (0063921)
                                                                bgreen@shaperolaw.com
                                                                JAMES A. MARX (0038999)
                                                                jmarx@shaperolaw.com
                                                                SHAPERO & GREEN LLC
                                                                Signature Square II, Suite 220
                                                                25101 Chagrin Blvd.
                                                                Cleveland, Ohio 44122
                                                                Phone: (216) 831-5100
                                                                *Attorneys for Plaintiffs*

---

[9] *Pomeroy v. Schwartz* (8th Dist.), 2013-Ohio-4920, ¶ 41, *citing Miller v. Keybank Natl. Assn.*, (8th Dist.), 2006-Ohio-1725, ¶ 43.

## CERTIFICATE OF SERVICE

        A true and accurate copy of the foregoing was served via the Court's electronic mail system this 18th day of February 2020 upon the following:

**Andrew D. Atkins**
McGuire Woods - Charlotte
Ste. 3000
201 North Tryon Street
Charlotte, NC 28202
aatkins@mcguirewoods.com

**Branden P. Moore**
McGuire Woods - Pittsburgh
Ste. 1800
260 Forbes Avenue
Pittsburgh, PA 15222
bmoore@mcguirewoods.com


                                                */s/*    *Brian Green*
                                                _____
                                                BRIAN GREEN (0063921)
                                               SHAPERO & GREEN LLC